IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH SMITH,

    Plaintiff,                                  CIV S-10-2941 GGH (TEMP)

    vs.

MICHAEL J. ASTRUE,                       <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

        Plaintiff, born November 27, 1959, applied on November 2, 2007 for Supplemental Security Income disability benefits, with a protective filing date of October 18, 2007. (Tr. at 107, 126.) Plaintiff alleged he was unable to work due to hypertension, obesity, bipolar disorder, post-traumatic stress disorder (PTSD), major depressive disorder, migraines,

1

osteoarthritis of the shoulders, hepatitis C, degenerative joint disease of the knees/left foot, and bilateral cataracts. (Tr. at 40-41, 46-48, 48,120, 313.) In a decision dated January 13, 2010, ALJ L. Kalei Fong, determined that plaintiff was not disabled. (Tr. at 11-23.) The ALJ made the following findings (citations to CFR omitted):[1]

>   1. The claimant has not engaged in substantial gainful activity since October 18, 2007, the application date.
>
>   2. The claimant has the following severe impairments: hypertension; osteoarthritis of the shoulders; hepatitis C; degenerative joint disease of the right ring metacarpal, knees, and left foot; degenerative disc disease of the thoracic and lumbar spine; migraine headaches; major depressive disorder; post-traumatic stress disorder; asthma; bilateral cataracts; obesity.
>
>   3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
|   |    | listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. |
|   | 4. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: he can lift, carry, push, and/or pull 50 pounds occasionally and 10 pounds frequently; he can stand and/or walk in 20 minute increments for a total of 3 to 4 hours in an 8-hour workday; he can sit in 20 minute increments for a total of 6 hours in an 8-hour work day; he requires the option to alternate sitting and standing at will; he cannot climb stairs, scaffolds, or ladders, balance, or stoop; he can kneel, crouch, and crawl occasionally; he has limited near visual acuity, far acuity, and depth perception; he should avoid moderate exposure to extreme temperatures and hazards; he should avoid concentrated exposure to wetness, humidity and noise; he should avoid all exposure to fumes; he can perform simple repetitive law stress tasks, but cannot perform detailed or complex tasks; he should avoid interaction with the public; and he can have limited interaction with co-workers and supervisors. |
|   | 5. | The claimant is unable to perform any past relevant work. |
|   | 6. | The claimant was born on November 27, 1959 and was 47 years old, which is defined as a younger individual 18-49, on the date the application was filed. |
|   | 7. | The claimant has at least a high-school education and is able to communicate in English. |
|   | 8. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocations Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills. |
|   | 9. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
|   | 10. | The claimant has not been under a disability, as defined in the Social Security Act, since October 18, 2007, the date the application was filed. |

(Tr. at 13-23.)

/////

ISSUES PRESENTED

Plaintiff has raised the following issues:  A.  Whether the ALJ Improperly Rejected the Opinion of Plaintiff's Treating Physician Regarding Mental Residual Functional Capacity; B.  Whether the ALJ Improperly Rejected Plaintiff's Lay Witness Evidence; C. Whether the ALJ Relied on an Incomplete Hypothetical; and D.  Whether the ALJ Committed Reversible Error by Failing to Question the Vocational Expert on Whether His Testimony Was Consistent with the DOT.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

  A.  Failure to Credit the Opinion of Treating Physician

Plaintiff contends that the ALJ failed to discuss the mental functional residual capacity assessment of plaintiff's treating physician, Dr. Hassan, and thereby tacitly rejected this opinion. (Tr. at 402).  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily,

more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[2] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, there is no dispute that Dr. Hassan is a treating physician and the ALJ acknowledged such, according Dr. Hassan's opinion "significant weight." (Tr. at 19.) Plaintiff is correct that the ALJ did not expressly discuss Dr. Hassan's opinion regarding plaintiff's mental limitations and instead only discussed Dr. Hassan's physical residual functional capacity

---

[2] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

5

assessment. (Tr. at 19 (ALJ's discussion of Dr. Hassan's opinion; 384-389 (Dr. Hassan's physical RFC); 402 (Dr. Hassan's mental RFC).) However, both of Dr. Hassan's assessments are dated October 6, 2009 (Tr. at 389, 402) and it is apparent from the colloquy between plaintiff's counsel and the ALJ during the hearing held two days later on October 8, 2009, that both assessments were provided to the ALJ, were reviewed by the ALJ, and were used to formulate the hypotheticals posed to the vocational expert. (Tr. at 35, 54-55, 57, 59-60, 401.) As discussed below, the hypothetical relied on by the ALJ incorporated Dr. Hassan's limitations and the ALJ's mental residual functional capacity finding limited plaintiff to simple, repetitive low stress tasks, no detailed or complex tasks, avoidance of interaction with the public, and limited interaction with co-workers and supervisors, which is consistent with Dr. Hassan's mental residual functional capacity assessment.[3] (Tr. at 18.) On this record, there was no tacit rejection of the treating physician's opinion and the ALJ did not commit error in failing to explicitly discuss this opinion in the body of the decision.

B. Whether the ALJ Improperly Rejected Plaintiff's Lay Witness Evidence

Plaintiff also contends the ALJ did not give proper reasons for discrediting the third party statements of plaintiff's girlfriend, Gail Tillman. (Tr. at 138-145.) An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into

---

[3] To the extent Dr. Hassan opined that plaintiff would have extreme limitations in the ability to interact with supervisors, this limitation was clarified by plaintiff at the hearing as feeling pressure from supervisors to complete tasks and resultant frustration. The ALJ also accorded significant weight to the mental residual functional capacity assessment of Dr. Richwerger, who opined that plaintiff had only slight impairment in his ability to understand and accept instructions from supervisors. (Tr. at 20, 350.) Dr. Richwerger's opinion was based on his own psychological examination and administration of standardized testing. (Tr. at 344-350.) To the extent there was a conflict between the opinions of Dr. Hassan and Dr. Richwerger regarding plaintiff's ability to interact with supervisors, the ALJ appropriately resolved this conflict, according significant weight to the opinion of the psychological specialist which was supported by independent clinical findings.

6

account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Plaintiff's girlfriend, Ms. Tillman, provided a third party function report. (Tr. at 138-145.) She reported plaintiff had problems with memory, concentration, ability to get along with others and difficulty lifting, squatting, bending, reaching and performing other physical activities. Id. The ALJ discussed this evidence and found it unpersuasive because it was inconsistent with the opinions of treating physician Dr. Hassan and state agency psychologist Dr. Levinson. (Tr. at 21, 368-370, 384-389, 402.) While some of the statements in the third party report are consistent with the physical functional limitations assessed by Dr. Hassan, the degree of limitation opined by the girlfriend was more extensive and properly rejected the ALJ as inconsistent with the record medical opinions. The ALJ also noted that the girlfriend repeatedly admitted that she could not respond to several of the inquiries on the questionnaire. (Tr. at 21, 138 ("Can't really say"); 140 ("I don't know"); 143 ("I couldn't say . . . I don't know . . . hard to say"); 144 ("I don't know . . . I can't say . . . hard to say . . . I don't know").) On this basis, the ALJ properly found that the girlfriend was not a reliable source of information regarding plaintiff's condition. (Tr. at 21.) The reasons given by the ALJ are germane to this witness and supported by substantial evidence. There was no error in the ALJ's treatment of the laywitness evidence.

C. Whether the ALJ Relied on an Incomplete Hypothetical

Plaintiff further contends the ALJ failed to include all of plaintiff's limitations in the hypothetical relied on by the ALJ in finding there were a significant number of jobs which

plaintiff can perform. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the hypothetical relied on by the ALJ did not include all of the mental limitations assessed by treating physician, Dr. Hassan, and the limitations as set forth in the third party report of plaintiff's girlfriend. As discussed above, the laywitness evidence was properly rejected. With respect to the mental limitations assessed by Dr. Hassan, the ALJ specifically referenced Dr. Hassan's mental assessment and incorporated those limitations into the hypothetical posed to the vocational expert. (Tr. at 55 (ALJ indicated hypothetical based on Dr. Hassan RFC); 59-60 (hypothetical included limitation to simple, repetitive tasks, cannot do detailed or complex instructions, avoid interaction with public, can interact with co-workers but should keep numbers minimum to avoid stress and being with a lot of people, severe limitation associated with supervisors; in testimony, plaintiff clarified limitation with respect to supervisors was not due to control issues or management issues but because of feeling frustrated by supervisor when pressured to complete a lot of tasks).) The hypothetical, although perhaps inelegantly stated, properly incorporated Dr. Hassan's limitations of moderate impairment in the ability to make judgments on simple work-related decisions and marked impairment in the ability to make detailed work-related decision, interact appropriately with the public, and respond to changes in a routine work setting, with extreme limitation in the ability to interact appropriately with a supervisor. (Tr. at 402.) The hypothetical was also consistent with the opinions of Dr.

Richwerger, who performed psychological evaluation of plaintiff with administration of standardized mental status testing on August 15, 2008 (Tr. at 344-350) and Dr. Levinson, a state agency psychologist who assessed plaintiff's mental residual functional capacity. (Tr. at 368-370.) The hypothetical was supported by substantial evidence in the record as a whole and the ALJ committed no error in this regard.

      D.  <u>Whether the ALJ Committed Reversible Error by Failing to Question the Vocational Expert on Whether His Testimony Was Consistent with the DOT</u>

      As discussed above, the ALJ properly assessed plaintiff's residual functional capacity and the hypothetical posed to the vocational expert by the ALJ included all of the limitations properly assessed and which were supported by the record. Plaintiff contends the ALJ committed reversible error by not inquiring of the vocational expert whether his testimony was consistent with the DOT.[4] In identifying two jobs, mail clerk and office helper, the vocational expert specifically referenced the DOT, indicating he was relying on the job descriptions and numbers thereof as listed in the DOT as eroded by plaintiff's limitations. (Tr. at 61.) This court has previously held that the job of mail clerk, which requires a reasoning level of three, is inconsistent with a mental residual functional capacity limiting plaintiff to the performance of simple, repetitive tasks. (Tr. at 18); see <u>Ingram v. Astrue</u>, 2010 WL 4392796, *8 (E.D. Cal. Oct. 29, 2010). However, the second job identified by the vocational expert, that of office helper, requires only a reasoning level of two, which is within the residual functional capacity assessed by the ALJ. <u>Id.</u> As eroded by plaintiff's additional limitations, the vocational expert testified 8,000 such positions were available in California. (Tr. at 61.) Plaintiff's argument that such a job cannot be performed by plaintiff because the DOT codes this position

---

[4] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 416.966(d)(1).

9

under "Speaking-Signaling" as 6 is unavailing in that the DOT also notes that this function is "not significant."  See DOT 239.567-010, 1991 WL 672232.  Because the vocational expert identified 8,000 jobs available to plaintiff, substantial evidence supports the ALJ's finding that plaintiff is not disabled.  See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and 64,000 nationwide are sufficient); Barker v. Secretary HHS, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,200 jobs in Southern California are sufficient).  As such, any failure of the ALJ to inquire of the vocational expert whether there was conflict between his testimony and that of the DOT is harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases), see also Massachi v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (procedural error harmless where no conflict).  On this record, the reliance by the ALJ on the vocational expert's testimony was proper and the failure to inquire of the vocational expert regarding consistency with the DOT does not constitute reversible error.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Summary Judgment (dkt. no. 22) is denied;

2. The Commissioner's Cross Motion for Summary Judgment (dkt. no. 23) is granted; and

3. Judgment is entered for the Commissioner.

DATED: December 21, 2011

   /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

JMM
smith.temp.ss